# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

KEVIN CALDWELL,     )
          )
     Petitioner,     )
          )
     vs.     )     **Case number 4:06cv0394 RWS**
          )          **TCM**
TROY STEELE and     )
JEREMIAH (JAY) W. NIXON,[1]     )
Attorney General for the State of     )
Missouri,     )
          )
     Respondents.     )

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

The 28 U.S.C. § 2254 petition of Kevin Caldwell ("Petitioner"), a Missouri prisoner, for federal habeas corpus relief is before the undersigned United States Magistrate Judge for a review and a recommended disposition. See 28 U.S.C. § 636(b).

### Background

Petitioner was charged in 2001 with first degree burglary, forcible rape, forcible sodomy, and second degree robbery. (Resp. Ex. B at 13-14.) He was also charged with being a prior and persistent offender, having pled guilty in five earlier cases to various charges of second degree burglary and stealing over $150. (Id. at 14.)

---

[1]Because Petitioner is challenging a sentence to be served in the future, the Attorney General of Missouri, Jeremiah W. Nixon, will be added as a proper party respondent. See Rule 2(b), Rules Governing Section 2254.

Petitioner's counsel moved to suppress evidence and statements. (Id. at 40-45.) These motions and a motion to exclude evidence of Short-Tandem Repeat ("STR") Deoxyribonucleic Acid ("DNA") based on a Profiler Plus and Cofiler™ testing method were heard the Friday before his jury trial was to begin. (Id. at 61-63; Resp. Ex. A-1 at 4-101.) Nancy Cadenhead, an officer with the St. Louis County Police Department, testified that she interviewed Petitioner after another police officer told her that the partial composite of the assailant given by the victim in the case she was investigating was very similar to one given by another victim in another home invasion and that Petitioner was a suspect in this other case. (Resp. Ex. A-1 at 51-54.) Before interviewing Petitioner, Cadenhead gave him the Miranda[2] warnings. (Id. at 55-57.) She also told him that he was being interviewed in connection with a burglary, rape, and stealing case in the Castle Point area. (Id. at 58.) Petitioner gave an oral statement, which he later repeated to be taped, that he had entered a house in the Castle Point area on July 28, 1999, through an unlocked front window, walked through the living room, down a hallway, and saw one bedroom with a closed door and one bedroom with an open door. (Id. at 61, 65-67.) A purse was lying on the floor of the open bedroom. (Id. at 67.) As he reached down for the purse, the floor creaked, waking the woman sleeping on the bed. (Id. at 67-68.) She told him he did not have to take the purse and could "have" her instead. (Id. at 68.) He reluctantly agreed and had sex with her in various positions for approximately two hours. (Id.) He did not take any money or jewelry from her. (Id. at 69-70.) He did not force the lady to have sex

---

[2]Miranda v. Arizona, 384 U.S. 436 (1966).

with him – she asked him, nor was there any oral or anal sex. (Id. at 70-71.) Cadenhead asked Petitioner if he would be willing to have samples taken of the hair on his head and pubic area and a buccal (check) swab. (Id. at 72-73.) He consented. (Id. at 73.) She was not present when another officer took the samples. (Id. at 73, 99.) Petitioner's pants, the same ones he was wearing on July 28, were also taken. (Id. at 69, 73.)

Robin Rothove, a DNA analyst for the Missouri State Highway Patrol Crime Laboratory, testified about the Profiler Plus and Cofiler™ method of testing STR DNA and its reliability. (Id. at 4-50.)

At the conclusion of both witnesses' testimony, the court denied the motions to suppress and gave trial counsel leave to submit the affidavit of his expert witness on the Profiler Plus and Cofiler™ method of testing if the witness, Donald Riley, Ph.D., of Seattle, Washington, was unable to be present at trial. (Id. at 102-03; Resp. Ex. B at 53.)

Petitioner's trial began the following Tuesday. (Resp. Ex. A-1 at 118.) At that time, another attorney entered her appearance as his co-counsel. (Id.) Having reviewed Dr. Riley's affidavit and the earlier testimony, the court decided to allow the STR DNA evidence. (Id. at 119.) The court granted a motion in limine to prohibit the State from bringing up evidence of Petitioner's prior convictions if he did not testify. (Id. at 121.)

When addressing the venire panel, trial counsel made the following remarks:

> In a criminal case, . . . the Defendant is presumed innocent. It's the State's burden to prove him guilty and that he doesn't have to present any evidence.

Something else, he doesn't have to testify. He doesn't have to take the stand and provide evidence of his innocence. That's the State's job.

If Mr. Caldwell doesn't take the stand here today or this week is anybody here gonna hold that against him?

. . . .

In this situation we have to talk about something that Mr. Caldwell will probably testify and that you'd probably hear that Mr. Caldwell has been convicted of burglary prior to this and one of the charges we're talking about here is a burglary. Some other serious charges along with that, but he has been convicted of burglary before.

. . . [N]ow the Judge is gonna instruct you that you can consider the fact that he has been convicted of burglary before only as evidence as to whether or not he's telling the truth And not as evidence of whether of not he's guilty of the charges that we're on trial for here.

Is everybody here in the jury box gonna be able to follow that instruction and use those prior convictions only to assess his credibility? Everybody over here agree that the only purpose of those burglaries is to assess his credibility? Anybody here gonna hold that against him and find him guilty of these charges because he pled guilty to two burglaries before?

(Id. at 184-86.) No one indicated any inability to follow such an instruction. (Id. at 186-87.)

The first witness to testify was the victim, K.L. (Id. at 255-365.) She testified that she had oral and vaginal sex with Petitioner the night of July 28, 1999. (Id. at 269-71.) She did not consent to such and complied because she felt she had no choice and was concerned for her three young children. (Id. at 261-72, 277-78.) She gave him $20 and a necklace so he would leave. (Id. at 284.) Other witnesses included the nurse who assisted the doctor who had examined and treated K.L. the morning of July 29, the doctor,

a police officer who responded to a call to go to K.L.'s residence that morning and who interviewed her, a detective who processed the crime scene and helped investigate the case, Cadenhead, the officer who took the samples from Petitioner, a forensic scientist with the St. Louis County Police Department who processed K.L.'s rape kit, another forensic scientist with the Department who testified about the chain of custody and who made a stain card, and the DNA analyst who testified at the motion hearing. (<u>Id.</u> at 366-400, 402-24, 427-557; Resp. Ex. A-2 at 558-671, 673-734, 738-879.) Petitioner did not testify, nor did he call any other witnesses.

The jury retired to deliberate shortly after noon on the fourth day of trial. (Resp. Ex. A-2 at 947.) After four hours, the jury sent the court a note: "Jury has reached on decision on burglary and stealing. The vote is 11 to 1 on guilty of rape. No consideration has been given on sodomy. Jury considers itself hung." (<u>Id.</u> at 959.) Without objection by either side, the court responded: "Continue deliberations." (<u>Id.</u> at 959, 960.) Five minutes later, trial counsel moved for a mistrial on the grounds that the jury was hung. (<u>Id.</u> at 960.) His motion was denied. (<u>Id.</u> at 961.) The court then brought the jury in and allowed them, escorted by the bailiff, to move their cars. (<u>Id.</u> at 962.) An hour later, the jury returned a verdict of guilty on all but the stealing charge. (<u>Id.</u> at 963-64.)

At the sentencing hearing, Petitioner complained of, inter alia, the participation at trial of a co-counsel he had not previously met, the taking of the buccal swab by trickery, and the threat that if he did not give the police the swab and his pants they would be taken

by force.  (Id. at 977, 1012, 1013.)  The court noted at one point that Petitioner initially was going to testify and later decided against it.  (Id. at 997.)

Petitioner was sentenced as a prior and persistent offender to a thirty-year term of imprisonment on the burglary charge followed by two concurrent life terms on the forcible rape and forcible sodomy charges.  (Resp. Ex. B at 118-19.)

Petitioner appealed on two grounds:  (1) the trial court erred by having ex parte communications "with the self-proclaimed 'hung' jury" without trial counsel present, and (2) the trial court abused its discretion in denying trial counsel's motion for a mistrial after the jury informed the court that they were hung.  (Resp. Ex. C at 14-15.)  Both grounds were rejected on their merits.  (Resp. Ex. E.)

Petitioner then moved for post-conviction relief pursuant to Missouri Supreme Court Rule 29.15.  (Resp. Ex. F at 3-8.)  This motion, amended by appointed counsel, alleged that trial counsel had been ineffective for (a) promising jurors that Petitioner would "probably testify"; (b) disclosing his prior convictions during voir dire; (c) advising him not to testify without also advising him of the potential detrimental effect on the jury of him not doing so after they were told he would and were told of his prior convictions; and (d) not calling him to testify.  (Id. at 15-34.)

Petitioner's primary trial counsel testified at an evidentiary hearing.  (Resp. Ex. G.) He explained that, at the start of the trial, Petitioner planned on testifying.  (Id. at 8, 9.) After mock direct and cross examinations, it was decided that he should not.  (Id. at 8, 9, 21.)  He participated in that decision.  (Id. at 8, 11, 21.)  Indeed, when trial counsel asked

him if he was going to testify; Petitioner replied, "No." (<u>Id.</u> at 10.) This change in strategy occurred during trial. (<u>Id.</u> at 11.) Relevant to the change were Petitioner's differing versions of what had happened and his prior convictions for burglary. (<u>Id.</u> at 8, 11, 12-13.) Trial counsel mentioned the prior convictions during voir dire to find out if the potential jurors would be able to follow the trial court's instructions defining the limited consideration to be given those convictions. (<u>Id.</u> at 13-14.) He was sure when conducting voir dire that Petitioner was going to testify, thus the reason for bringing up Petitioner's prior convictions. (<u>Id.</u> at 16, 20.) He did not know why he referred to Petitioner "probably" testifying, but it was likely due to his reluctance to make commitments in opening statements. (<u>Id.</u> at 16.)

After the conclusion of trial counsel's testimony, Petitioner's post-conviction counsel informed the court that Petitioner wanted to proceed pro se on the claims he had raised in his pro se motion. (<u>Id.</u> at 25-26.)

Petitioner testified that he never told his trial counsel that he was going to testify. (<u>Id.</u> at 28, 29, 36, 41.) What he did tell him was that he had not yet decided what to do. (<u>Id.</u> at 28, 41.) He decided not to testify only after being pressured by trial counsel. (<u>Id.</u> at 30.) Also, trial counsel should have presented Dr. Riley's testimony. (<u>Id.</u> at 32-33.)

Trial counsel testified on rebuttal that he had learned at trial of problems with Dr. Riley's testimony. (<u>Id.</u> at .) Specifically, Dr. Riley characterized a treatise as being learned that stated that a criminal defendant should retest a DNA sample, but he had not recommended that Petitioner's DNA sample be retested, which could have been done at

half the costs of his fees; two-thirds of Dr. Riley's income was from expert witness fees; and Dr. Riley had conducted only two DNA tests in his lifetime, neither had been of the STR type, both had been done in the non-certified laboratory in his garage, and the results of one of those tests had been cross-contaminated.  (Id. at 50, 52-53, 59-60, 65.)  Counsel had discussed these flaws with Petitioner and the two had decided, as a matter of trial strategy, not to call Dr. Riley as a witness.  (Id. at 54.)

Petitioner asked trial counsel why he had not objected to the court instructing the jury to continue deliberations when he was not present.  (Id. at 81.)  Trial counsel explained that he thought the court was simply going to tell the jury that they could move their cars.  (Id.)

The motion court denied relief, finding, in relevant part, as follows.

[D]uring their pre-trial discussions [trial counsel] discussed [Petitioner's] right to testify with [Petitioner] but that if he did, the jury would learn of all his prior convictions.  Following those discussions [Petitioner] was adamant that he wanted to testify to deny the charges.  Because of [Petitioner's] insistence on testifying, trial counsel was forced to voir dire the venire panel on the effect of [Petitioner's] priors on his presumption of innocence, that is, which jurors would be more likely to convict just because [Petitioner] had prior convictions. [Trial counsel] needed this information to either strike or have the Court strike these jurors.  At the same time, [trial counsel] had to find out which potential jurors would infer guilt from [Petitioner's] failure to testify if he changed his mind, so that [trial counsel] had to pick a jury with either eventuality in mind.

. . . [A]fter the jury had been selected, [trial counsel], with the assistance of [another assistant public defender] was preparing [Petitioner] for his courtroom testimony by conducting a mock direct and cross examination of [Petitioner] and [Petitioner's] story was changing and he was not handling questioning very well.  That following this questioning [Petitioner] changed his mind about testifying and decided against testifying so as not to place his own credibility on the line but instead to have his attorneys attack the State's

- 8 -

case, particularly in light of the fact that [Petitioner] and his attorneys did not feel that the victim, [K.L.], had testified very convincingly.

. . . [W]ith respect to [Petitioner's] complaint of ineffectiveness for [trial counsel's] failure to call Dr. Donald Riley to attack the credibility of the State's DNA evidence the Court finds that [trial counsel] did not call Dr. Donald Riley as a matter of trial strategy. . . . However, when [trial counsel] found out that if called to testify Dr. Riley would testify that he had only conducted two DNA tests in his life, both having been conducted in a laboratory he installed in his home garage, and that he derived two thirds of his income from expert witness fees exclusively for the defense in criminal cases, and the fact that he cited a publication in his report as authoritative which said that in the event that there is any question as to the validity of a test result the best procedure to follow is to retest the item in question (which Dr. Riley never suggested in his report) that [trial counsel] decided that he would not make a credible witness.

(Resp. Ex. F at 40-41.)

Petitioner appealed on the grounds that he had been denied the effective assistance of counsel when trial counsel (a) promised jurors on voir dire that Petitioner would "probably testify" in his own defense and (b) disclosed during voir dire his prior convictions for burglary and other serious offenses. (Resp. Ex. H at 15.)

The appellate court found the grounds to be without merit. (Resp. Ex. J.) Specifically, the court found that:

Trial counsel testified at the evidentiary hearing that he had had many conversations with [Petitioner] prior to the trial and that [Petitioner] had always told him that he wanted to testify, and that he had no doubt that [Petitioner] was going to testify before trial. Trial counsel stated that the decision that [Petitioner] would not testify came after the direct examination of the victim and after the mock examination of [Petitioner] conducted by trial counsel and his assistant. Trial counsel stated that he used the word "probably" during the voir dire regarding whether [Petitioner] would testify because "I don't like to make commitments on opening statement just in case[,]" but at the time he made the statement he "had no doubt that he was

gonna [sic] testify."  Although trial counsel was certain that his client was going to testify, he did not tell the jury that, and he did not promise that [Petitioner] would testify.

. . . .

. . . [T]rial counsel . . . did not repeatedly promise in an opening statement that [Petitioner] would testify and make [Petitioner's] testimony and credibility the centerpiece of his defense.  Trial counsel in voir dire pointed out that the State has the burden of proving its case, that [Petitioner] did not have to prove his innocence and did not have to testify, and specifically asked if anyone would hold it against [Petitioner] if he did not testify.  Trial counsel did not promise even once, much less four times,[3] that [Petitioner] would testify.  Trial counsel said merely that [Petitioner] "will probably testify."  He did not make [Petitioner's] testimony the centerpiece of his defense.  Trial counsel also stated sound strategic reasons for subsequently advising [Petitioner] not to testify, namely the perceived weakness of the victim's testimony, and [Petitioner's] poor performance and inconsistent story in the mock examination which would have diminished his credibility.

. . . .

. . . [T]he principled reasons for [Petitioner] ultimately not testifying, namely [his] poor performance in the mock examination and the perceived weakness of victim's testimony, were not "obvious from the outset of the case," but rather emerged after voir dire.

. . . .

[Petitioner] also contends that trial counsel was ineffective for disclosing his prior convictions on voir dire, and asserts that "no reasonably competent trial counsel would have disclosed on voir dire that the defendant

---

[3]Petitioner had argued that the holding of the First Circuit Court of Appeals in **Ouber v. Guarino**, 293 F.3d 19 (1st Cir. 2002), required relief.  In that case, "the lawyer structured the entire defense around the prospect of the petitioner's testimony[,]" promising four times during opening statement that the petitioner would testify, emphasizing the importance of her testimony, and calling twenty-four witnesses to testify to her reputation for veracity.  **Id.** at 27.  Although the petitioner wanted to testify, her attorney subsequently advised her not to and did not call her.  **Id.** The court concluded that the combination of initially deciding to present the petitioner's testimony as the focus of the defense and later advising her not to testify was "indefensible."  **Id.**

had prior convictions unless the defendant was *absolutely certain* to testify."
[Petitioner] cites no case that supports this contention . . . .

. . . [I]n the present case trial counsel testified that based on his numerous meetings and conversations with [Petitioner], counsel "had no doubt before trial that [Petitioner] wanted to testify and get up and say he didn't rape [the victim]." Trial counsel added that at the start of the trial, [Petitioner] was going to testify. He stated that during the trial, based on the mock examination of [Petitioner] that he and another member of the Public Defender's Office performed in which [Petitioner] performed poorly as well as the perception that the victim's trial testimony was less damaging that [sic] trial counsel had anticipated, it was determined that "we were better off not having him testify." Trial counsel testified that it was part of his trial strategy to address [Petitioner's] prior convictions during voir dire because he wanted to know "whether or not that revelation had any impact upon any of the jurors."

(Id. at 5-6, 7-8, 9, 11, 12.)

Petitioner now seeks federal habeas relief on three grounds. First, his confession was coerced because it was made after an illegal arrest done without probable cause or warrant and because he was (i) "subtly threatened" that he would be put away for life if he did not confess and (ii) told that he would "walk" if his statement did not match that of the victim's. Second, evidence should have been suppressed because samples of his hair and salvia were taken without a court order or probable cause and with the threat of force and because his work pants were taken without a court order. Third, his trial counsel was ineffective for (a) not conducting a pretrial investigation, (b) failing to file competent pretrial motions, (c) tainting the entire venire panel, (d) failing to competently cross-examine the State's witnesses, (e) arbitrarily inviting another attorney to assist at trial although that attorney was unknown to Petitioner, and (f) failing to call two material expert witnesses for the defense, and his appellate counsel was ineffective for failing to

raise meritorious points. Respondent counters that the first two grounds are procedurally barred by Petitioner's failure to raise them on appeal and are barred by <u>Stone v. Powell</u>, 428 U.S. 465 (1976). All but one claim, ground 3(c), of the third ground are barred because they were not raised in the amended Rule 29.15 motion or on appeal.

## <u>Discussion</u>

<u>Ground One:  Coerced Confession.</u>  Petitioner did not present his claim that his confession was coerced to the state courts in his direct appeal. With an exception not applicable to his case,[4] he cannot file another direct appeal. <u>See</u> **State v. Graham**, 13 S.W.3d 290, 293 (Mo. 2000) (en banc); **State v. White**, 70 S.W.3d 644, 650 (Mo. Ct. App. 2002); **State v. Davis**, 32 S.W.3d 603, 609 (Mo. Ct. App. 2000). Nor can a motion for post-conviction relief be used as a substitute for a second appeal. <u>See</u> **Williams v. State**, 205 S.W.3d 300, 307 (Mo. Ct. App. 2006); **Wenzel v. State**, 185 S.W.3d 715, 718 (Mo. Ct. App.), <u>cert. denied</u>, 127 S.Ct. 265 (2006); **Kerr v. State**, 167 S.W.3d 809, 810 (Mo. Ct. App. 2005). Also, Petitioner cannot raise a claim of trial court error in not suppressing his confession in a post-conviction motion absent a showing of rare and exceptional circumstances. <u>See</u> **McQuary v. State**, 241 S.W.3d 446, 452-53 (Mo. Ct. App. 2007). Such circumstances do not exist when the movant had an opportunity to raise the now-presented claim. <u>See</u> **Tisius v. State**, 183 S.W.3d 207, 212 (Mo. 2006) (en banc); **State v. Hunter**, 840 S.W.2d 850, 860 (Mo. 1992) (en banc).

---

[4]This exception permits another direct appeal after a case is remanded for resentencing. **State v. White**, 70 S.W.3d 644, 650 (Mo. Ct. App. 2002).

"Claims that have not been presented to the state courts, and for which there are no remaining state remedies, are procedurally defaulted." **Skillicorn v. Luebbers**, 475 F.3d 965, 976 (8th Cir.), cert. denied, 128 S.Ct. 297 (2007); accord **Echols v. Kemna**, 511 F.3d 783, 785 (8th Cir. 2007) ("If a petitioner has not presented his habeas corpus claim to the state court, the claim is generally defaulted." (internal quotations omitted)), cert. denied, 128 S.Ct. 2447 (2008). "Unless a habeas petitioner shows cause and prejudice or that he is actually innocent of the charges, a court may not reach the merits of procedurally defaulted claims in which the petitioner failed to follow applicable state procedural rules in raising the claims." **Skillicorn**, 475 F.3d at 976-77; accord **Barnett v. Roper**, 541 F.3d 804, 808 (8th Cir. 2008); **Greer v. Minn.**, 493 F.3d 952, 957 (8th Cir.), cert. denied, 128 S.Ct. 672 (2007). "'[T]he existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule.'" **Id.** at 957 (quoting Murray v. Carrier, 477 U.S. 478, 488 (1986)). There is no exhaustive catalog of the objective impediments, nor have the precise contours of the cause requirement been clearly defined. **Ivy v. Caspari**, 173 F.3d 1136, 1140 (8th Cir. 1999). What has been established is that a "fail[ure] to raise a claim despite recognizing it, does not constitute cause for a procedural default." **Murray**, 477 U.S. at 486. Clearly, Petitioner recognized at the trial level that, as a result of an illegal arrest, he gave a confession coerced by threats and promises. Thus, Petitioner has not established, or even alleged, cause for the default

of his first ground; consequently, the question of prejudice need not be reached.  <u>See</u> **Schawitsch v. Burt**, 491 F.3d 798, 804 (8th Cir. 2007).

The merits of Petitioner's first ground may still be reached if he shows actual innocence.  **Cagle v. Norris**, 474 F.3d 1090, 1099 (8th Cir. 2007).  This requires new evidence and a "show[ing] that 'it is more likely than not that no reasonable juror would have convicted him in light of th[at] new evidence.'"  **Osborne v. Purkett**, 411 F.3d 911, 920 (8th Cir. 2005) (quoting <u>Schlup v. Delo</u>, 513 U.S. 298, 327 (1995)).  Petitioner has not alleged that new evidence of his innocence exists.

<u>Ground Two:  Illegally Seized Evidence.</u>  Petitioner argues in his second ground that evidence should have been suppressed because it was taken without a court order or probable cause and was taken by force.  The evidence at issue was the subject of a motion to suppress that was denied following a hearing at which a St. Louis County Police department officer testified and was cross-examined.  The motion to suppress was not the subject of any argument presented in Petitioner's direct appeal.  Consequently, his second ground is procedurally defaulted for the reasons set forth in the discussion on Ground One.

Additionally, "[a] Fourth Amendment claim is not cognizable on federal habeas review unless the state fails to provide 'an opportunity for full and fair litigation of [the] claim.'"  **Palmer v. Clarke**, 408 F.3d 423, 437 (8th Cir. 2005) (quoting <u>Stone v. Powell</u>, 428 U.S. 465, 494 (1976)) (second alteration in original); <u>accord</u> **Sweet v. Delo**, 125 F.3d 1144, 1149 (8th Cir. 1997); **Hochstein v. Hopkins**, 113 F.3d 143, 147 (8th Cir. 1997).

"[A]n opportunity for full and fair litigation" is denied when (1) "the state provided no procedure by which the prisoner could raise his Fourth Amendment claim," or (2) "the prisoner was foreclosed from using that procedure because of an unconscionable breakdown in the system." **Poole v. Wood**, 45 F.3d 246, 249 (8th Cir. 1995); accord **Willett v. Lockhart**, 37 F.3d 1265, 1272 (8th Cir. 1994) (en banc).  Petitioner's Fourth Amendment claim about the seized evidence was presented to the trial court and was denied following an evidentiary hearing during which he had the opportunity to cross-examine the State's witnesses and offer his own.  Although the issue was not raised in his direct appeal, the omission is not a result of him being deprived of the opportunity to litigate his Fourth Amendment claim.

Ground Three:  Ineffective Assistance of Trial and Appellate Counsel.  Petitioner next presents six claims of ineffective assistance of trial counsel and one claim of ineffective assistance of appellate counsel.  The only claim raised in his Rule 29.15 motion was the claim that trial counsel was ineffective for tainting the venire panel by telling them that Petitioner would "probably testify" and telling them about his prior convictions.

All but the one claim are procedurally defaulted.  See **Interiano v. Dormire**, 471 F.3d 854, 856 (8th Cir. 2006) (claims not presented in Rule 29.15 motion or included in appeal are procedurally defaulted); **Osborne**, 411 F.3d at 919 (claim raised in Rule 29.15 motion but not presented on appeal was procedurally barred); **Lyons v. Luebbers**, 403 F.3d 585, 593 (8th Cir. 2005) ("A section 2254 applicant's failure to raise a claim in state

post-conviction proceedings results in procedural default of that claim.").  Petitioner can not raise these claims in a successive post-conviction motion.  <u>See</u> Mo.S.Ct.R. 29.15(l); **<u>Smith v. State</u>**, 21 S.W.3d 830, 831 (Mo. 2000) (en banc).  Again, Petitioner has failed to allege cause for his default or made any allegation or showing of actual innocence.

Petitioner did present his "tainting" claim to the state courts, which rejected both aspects of that claim on their merits.

Title 28 U.S.C. § 2254(d) mandates that a federal court "not grant habeas relief on a claim that was adjudicated on the merits in state court unless 'it resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States,'" **<u>James v. Bowersox</u>**, 187 F.3d 866, 869 (8th Cir. 1999) (quoting § 2254(d)(1)), or it "'resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding,'" **<u>Evans v. Rogerson</u>**, 223 F.3d 869, 871 (8th Cir. 2000) (quoting § 2254(d)(2)).  <u>See</u> <u>also</u> **<u>Weaver v. Bowersox</u>**, 241 F.3d 1024, 1029 (8th Cir. 2001) ("Section 2254(d) distinguishes between two types of erroneous decisions – those of law and those of fact[.]").

"The Supreme Court has identified two ways in which a state court decision may meet the requirements imposed by the 'unreasonable application' prong of section 2254(d)(1)." **<u>Revels v. Sanders</u>**, 519 F.3d 734, 739 (8th Cir.), <u>cert. denied</u>, — S.Ct. — (Nov. 17, 2008).  First, the "court may grant the writ if the state court . . . 'applie[d] a rule

that contradicts the governing law set forth in [Supreme Court] cases . . . .'" **Id.** (quoting

Penry v. Johnson, 532 U.S. 782, 792 (2001)) (second and third alterations in original).

Second, the court may grant the writ if the state court "'confront[ed] a set of facts that are

materially indistinguishable from a decision of th[e Supreme] Court and nevertheless

arrive[d] at a result different from [the Court's] precedent.'" **Id.** (quoting Penry, 532 U.S.

at 792) (first and third alterations in original). "'Avoiding these pitfalls does not require

citation of [Supreme Court] cases – indeed, it does not even require awareness of [the

Court's] cases, so long as neither the reasoning nor the result of the state-court decision

contradicts them.'" **Id.** (quoting Early v. Packer, 537 U.S. 3, 8 (2002) (per curiam))

(alterations in original).

A state court decision may meet the "unreasonable determination of the facts in light

of the evidence presented in the state court proceedings" standard of § 2254(d)(2) "only

if it is shown that the state court's presumptively correct factual findings do not enjoy

support in the record." **Ryan v. Clarke**, 387 F.3d 785, 790 (8th Cir. 2004).

And, "'[t]o the extent that inferior federal courts have decided factually similar cases,

reference to those decisions is appropriate in assessing the reasonableness . . . of the state

court's treatment of the contested issue.'" **Copeland v. Washington**, 232 F.3d 969, 974

(8th Cir. 2000) (quoting Long v. Humphrey, 184 F.3d 758, 761 (8th Cir. 1999))

(alterations in original). Additionally, "the [state courts'] 'summary nature' of the

discussion of [a] federal constitutional question does not preclude application of [2254(d)'s] standard." **Brown v. Luebbers**, 371 F.3d 458, 462 (8th Cir. 2004).

"The right to effective assistance of counsel 'is a fundamental right of criminal defendants; it assures the fairness, and thus the legitimacy, of our adversary process.'" **Smith v. Rogerson**, 171 F.3d 569, 572 (8th Cir. 1999) (quoting <u>Kimmelman v. Morrison</u>, 477 U.S. 365, 374 (1986)). "'The benchmark for judging any claim of ineffectiveness [of counsel] must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [relevant proceeding] cannot be relied on as having produced a just result.'" **Jackson v. Gammon**, 195 F.3d 349, 354 (8th Cir. 1999) (quoting <u>Kellogg v. Skon</u>, 176 F.3d 447, 452 (8th Cir. 1999)) (second alteration in original). "Only reasonable competence, the sort expected of the ordinary fallible lawyer, is demanded by the Sixth Amendment." **White v. Helling**, 194 F.3d 937, 941 (8th Cir. 1999) (internal quotations omitted). Moreover, "[t]here is a strong presumption that counsel's challenged actions or omissions were, under the circumstances, sound trial strategy." **Garrett v. Dormire**, 237 F.3d 946, 949-50 (8th Cir. 2001).

To establish that counsel's lack of competence violated the Sixth Amendment, the petitioner must show that counsel's performance was deficient and prejudicial. **Kellogg**, 176 F.3d at 452. To establish that counsel's performance was deficient, a petitioner must show that counsel "'made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.'" **Greiman v. Thalacker**,

181 F.3d 970, 972 (8th Cir. 1999) (quoting <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984)).  To establish prejudice, a petitioner must demonstrate "'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'"  **Id.** (quoting <u>Strickland</u>, 466 U.S. at 694).  "'A reasonable probability is a probability sufficient to undermine confidence in the outcome.'"  **Carroll v. Schriro**, 243 F.3d 1097, 1100 (8th Cir. 2001) (quoting <u>Strickland</u>, 466 U.S. at 694).  "'In making this determination, a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury.'"  **Lawrence v. Armontrout**, 31 F.3d 662, 666 (8th Cir. 1994) (quoting <u>Strickland</u>, 466 U.S. at 695).  The burden of showing a reasonable probability is the petitioner's.  **Lawrence v. Armontrout**, 961 F.2d 113, 115 (8th Cir. 1992).

The question of prejudice from counsel's performance need not be reached if the performance was not deficient.  <u>See</u> **Parkus v. Bowersox**, 157 F.3d 1136, 1140 (8th Cir. 1998).  Conversely, the question of counsel's allegedly deficient performance need not be reached if a petitioner has failed to show prejudice.  <u>See</u> **Strickland**, 466 U.S. at 697; **Hoon v. Iowa**, 313 F.3d 1058, 1061 (8th Cir. 2002); **Siers v. Weber**, 259 F.3d 969, 974 (8th Cir. 2001).  Thus, if a petitioner has failed to show that, but for an allegedly deficient performance by his trial counsel, there is a reasonable probability that the outcome of his trial would have been different, his claim of ineffective assistance of counsel fails.  **Morales v. Ault**, 476 F.3d 545, 550 (8th Cir.), <u>cert. denied</u>, 128 S.Ct. 177 (2007).

The state appellate court found that trial counsel informed the venire panel during voir dire that Petitioner would "probably testify" based on his conversations with Petitioner to that point in time. Perceiving K.L.'s testimony and Petitioner's performance on mock examinations to be weak – the former, actual performance being beneficial to Petitioner and the latter, potential performance being detrimental – trial counsel advised Petitioner not to testify. "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable[,]" although "strategic choices resulting from lack of diligence in preparation and investigation [are] not protected by the presumption in favor of counsel." **Armstrong v. Kemna**, 534 F.3d 857, 864 (8th Cir. 2008) (third alteration in original) (internal quotations omitted); accord **Evans v. Luebbers**, 371 F.3d 438, 445 (8th Cir. 2004); **Taylor v. Bowersox**, 329 F.3d 963, 971 (8th Cir. 2003). Trial counsel elected to voir dire the venire panel about the possibility of Petitioner testifying and later advised him, based on developing circumstances, to not testify. Petitioner points to no information overlooked or law not considered by trial counsel.[5] Trial counsel's decisions were strategic ones and not deficient performances.

Nor was trial counsel's informing the panel about Petitioner's prior record a deficient performance. At that time, his client was going to testify. Trial counsel wanted to remove

---

[5]As noted by the state appellate court, see Respondent's Exhibit J at 6-7, Petitioner's reliance on **Ouber**, supra, note 2, is misplaced. The attorney in that case built his defense on the petitioner testifying and then, without any intervening circumstances or explanations, advised her not to. In the instant case, although Petitioner was initially going to testify, his doing so was not emphasized in the opening statement or in the presentation of the case as in **Ouber**, and trial counsel's later advice not to was based on developments that occurred during trial.

any potential jurors who would have negatively assessed his client's testimony based on prior convictions. Again, this is a strategic decision.

## Conclusion

For the foregoing reasons, consideration of the merits of all but one of Petitioner's § 2254 claims is procedurally barred. That one claim, an argument of ineffective assistance of trial counsel, was resolved on its merits by the state courts. Their resolution is not contrary to clearly established Federal Law, is not an unreasonable application of such law, and is not an unreasonable determination of the facts. Consequently, this claim too is unavailing. Accordingly,

**IT IS HEREBY ORDERED** that Jeremiah (Jay) W. Nixon, Attorney General for the State of Missouri, is added as a Respondent.

**IT IS HEREBY RECOMMENDED** that the 28 U.S.C. § 2254 petition of Kevin Caldwell be **DENIED** without further proceedings.

The parties are advised that they have **up to and including December 15, 2008**, in which to file written objections to this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained, and that failure to file timely objections may result in waiver of the right to appeal questions of fact. See **Griffini v. Mitchell**, 31 F.3d 690, 692 (8th Cir. 1994).

/s/ Thomas C. Mummert, III
THOMAS C. MUMMERT, III
UNITED STATES MAGISTRATE JUDGE

Dated this 2nd day of December, 2008.